```
             IN THE UNITED STATES DISTRICT COURT

                  FOR THE DISTRICT OF HAWAII

UNITED STATES OF AMERICA,    )   CR. NO. 13-00515 SOM
                             )
          Plaintiff,         )   ORDER DENYING DEFENDANT ROY
                             )   APAO'S MOTION FOR
                             )   COMPASSIONATE RELEASE
                             )
     vs.                     )
                             )
ROY APAO,                    )
                             )
          Defendant.         )
                             )
_____ )
```

## ORDER DENYING DEFENDANT
## ROY APAO'S MOTION FOR COMPASSIONATE RELEASE

**I.      INTRODUCTION.**

In 2013, Defendant Roy Apao entered guilty pleas to conspiring to distribute methamphetamine and to distributing or possessing with intent to distribute methamphetamine. In 2014, this court sentenced Apao to 140 months in prison. He has served almost 90 months of his sentence. He is currently incarcerated at FCI Phoenix, and the Bureau of Prisons says his projected release date is May 19, 2023.

Apao now moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A). The primary basis for his motion is the COVID-19 pandemic. Apao contends that several underlying medical conditions make him vulnerable to complications if he contracts COVID-19. After considering Apao's medical condition, the time remaining on his sentence, and his history, this court concludes that Apao has not demonstrated that extraordinary and compelling

circumstances warrant a reduction in his sentence.

**II.      ANALYSIS.**

Apao's compassionate release request is governed by 18 U.S.C. § 3582(c)(1)(A), which provides:

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

In other words, for the court to exercise its authority under § 3582(c)(1)(A), it must (1) find that the defendant exhausted his administrative remedies or that 30 days have passed since he filed an administrative compassionate relief request; (2) also find, after considering the factors set forth in section 3553(a), that extraordinary and compelling reasons warrant a sentence reduction; and (3) find that such a reduction is consistent with the Sentencing Commission's policy statements. *United States v. Scher*, 2020 WL 3086234, at *2 (D. Haw. June 10, 2020).

        **A.    Apao has satisfied the time-lapse requirement of 18 U.S.C. § 3582(c)(1)(A).**

Apao submitted an administrative compassionate release request to the warden of his prison on June 24, 2020, more than 30 days before he filed this motion. ECF No. 49, PageID # 318. The Government is not contesting Apao's satisfaction of the exhaustion requirement. *Id.* Accordingly, this court finds that Apao has fulfilled the first requirement of § 3582(c)(1)(A).

        **B.    This Court Has Discretion in Determining Whether Extraordinary and Compelling Reasons Justify a Reduced Sentence.**

This court turns to § 3582(c)(1)(A)'s second requirement: whether extraordinary and compelling reasons warrant a sentence reduction. In orders addressing compassionate release motions in other cases, this court has expressly recognized that it possesses considerable discretion in determining whether a particular defendant has established the existence of extraordinary and compelling reasons that justify early release. This court has also stated that, in reading § 3582(c)(1)(A) as providing for considerable judicial discretion, the court is well aware of the absence of an amended policy statement from the Sentencing Commission reflecting the discretion given to courts when Congress amended the statute to allow inmates themselves to file compassionate release motions. *United States v. Mau*, 2020 WL 6153581 (D. Haw. Oct. 20, 2020); *United States v. Scher,* 2020

WL 3086234, at *2 (D. Haw. June 10, 2020); *United States v. Cisneros*, 2020 WL 3065103, at *2 (D. Haw. Jun. 9, 2020); *United States v. Kamaka*, 2020 WL 2820139, at *3 (D. Haw. May 29, 2020). Specifically, this court has recognized that an Application Note to a relevant sentencing guideline is outdated. This court continues to view its discretion as not limited by Sentencing Commission pronouncements that are now at odds with the congressional intent behind recent statutory amendments. *Mau*, 2020 WL 6153581; *see also United States v. Brooker*, 976 F.3d 228, 235-36 (2d Cir. 2020) ("[W]e read the Guideline as surviving, but now applying only to those motions that the BOP has made."); *cf. United States v. Ruffin*, --- F.3d ---, 2020 WL 6268582, at *6-7 (6th Cir. Oct. 26, 2020) (noting that some courts have held that the Application Note is not "applicable," but not deciding the issue).

        **C.    Apao has not demonstrated that extraordinary and compelling circumstances justify his early release**.

Apao contends that extraordinary and compelling circumstances justify his early release here. He relies primarily on the risks he faces if he contracts COVID-19, which is present at FCI Phoenix,[1] where he is housed. The CDC currently lists the following conditions for people of any age as

---

[1] The BOP reports that four inmates and five staff members have tested positive for COVID-19 at FCI Phoenix. www.bop.gov/coronavirus (last visited November 13, 2020).

4

creating an increased risk of a severe illness from COVID-19:

- *Cancer
- *Chronic kidney disease
- *COPD (chronic obstructive pulmonary disease)
- *heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies
- *Immunocompromised state (weakened immune system) from solid organ transplant
- *Obesity (body mass index [BMI] of 30 kg/m2 or higher but < 40 kg/m2)
- *Severe Obesity (BMI = 40 kg/m2)
- *Sickle cell disease
- *Smoking
- *Type 2 diabetes mellitus

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited October 22, 2020).

The CDC also lists the following as possibly increasing the risk of a severe illness from COVID-19:

- *Asthma (moderate-to-severe)
- *Cerebrovascular disease (affects blood vessels and blood supply to the brain)
- *Cystic fibrosis
- *Hypertension or high blood pressure
- *Immunocompromised state (weakened immune system) from blood or bone marrow transplant, immune deficiencies,

5

        HIV, use of corticosteroids, or use of other immune weakening medicines

        *Neurologic conditions, such as dementia

        *Liver disease

        *Overweight (BMI > 25 kg/m2, but < 30 kg/m2)

        *Pregnancy

        *Pulmonary fibrosis (having damaged or scarred lung tissues)

        *Thalassemia (a type of blood disorder)

        *Type 1 diabetes mellitus

*Id.*

        Under the CDC's guidance, Apao's morbid obesity (his BMI is 41.6) and his hypertension increase his risk of a severe illness if he contracts COVID-19. Apao also cites a European study that suggests that, even though sleep apnea is not on either of the CDC's lists, that condition may also increase his risk of complications. ECF No. 50, PageID # 336. This court agrees that there appears to be some evidence that sleep apnea, a respiratory disease, could increase Apao's risk of complications if he contracts COVID-19, although that evidence does not appear to be dispositive at this time.[2]

---

[2] If further evidence emerges, or if the CDC adds sleep apnea to either of its lists of conditions that could increase Apao's risk of a severe illness if he contracts COVID-19, Apao is free to ask this court to revisit his request.

In any event, Apao does have some preexisiting conditions[3] that may increase his risk of complications if he contracts COVID-19. Apao is 51 years old; his age does not place him in the highest risk category. While this court certainly agrees that Apao has legitimate concerns about contracting COVID-19, his medical conditions, standing alone, are not an exceptional and compelling reason that warrants a reduction in sentence.

Another factor this court considers is the time remaining on Apao's sentence. Apao has been in custody since May 13, 2013. ECF No. 37, PageID # 125. Even if credit for good behavior is taken into account, he still has more than two years left to serve.

Apao argues that he might have received a shorter sentence if he had been sentenced under today's law. As Apao asserts, when he was sentenced, the applicable mandatory minimum was 10 years. ECF No. 40, PageID # 167. In 2018, Congress passed the First Step Act, which reduced the mandatory minimum Apao would have faced to 5 years. Congress did not make the

---

[3] Apao also maintains that the medication that he is taking to control his rheumatoid arthritis also increases his risk because it is an immunosuppressant. According to the CDC, rheumatoid arthritis *may* be treated by immunosuppressants. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/immunocompromised.html. However, the Government cites an article that states that the specific medication Apao is taking is *not* an immunosuppressant, *see* ECF No. 49, PageID # 324, and Apao has not presented any evidence that it is.

First Step Act retroactive to cases like Apao's. In any event, Apao's sentence of 140 months was *above* the then-applicable 10-year mandatory minimum. Apao has not persuaded this court that he would have received a sentence resulting in release at this time even if he had faced a 5-year mandatory minimum.

This court also considers Apao's extensive criminal history. In 1990, Apao was convicted of promoting a dangerous drug in the third degree. ECF No. 37, PageID # 132-136. He was sentenced to 6 months in prison and 5 years of probation. During his term of probation, he failed several drug tests, and also failed to maintain contact with his probation officer. *Id.* at 133. He committed two more crimes during his term of probation: in 1993, he was sentenced to 30 days in prison for criminal property damage, and, after his release, he was sentenced to 10 years in prison for armed robbery. *Id.* at 133-34. In the latter offense, Apao entered a jewelry store, held the owner at gunpoint, and absconded with jewelry worth approximately $100,000.00. *Id.* at 134. He was released on parole in 1997, and in 2000 his parole was revoked for failing to complete a drug treatment program. *Id.* He was again paroled in 2001, and approximately two months after that he was involved in the theft of a car. *Id.* at 135. In 2002, he was convicted of unauthorized control of a propelled vehicle. *Id.* Apao was sentenced to 5 years in prison. *Id.* He was paroled in 2004, but his parole was

revoked in 2005 after he again failed to complete a drug treatment program. *Id.* He was released in 2007, but in 2011 he broke into a car and stole a purse. *Id.* In connection with that incident, he was convicted of unauthorized entry into a motor vehicle. *Id.* at 135-36. His term of probation began in 2011, and in 2013 he was arrested in connection with the instant case. *Id.* at 136. In short, his record is not encouraging.

Finally, this court considers Apao's record while in prison. In 2013, Apao was disciplined for "assaulting without serious injury," and he lost 27 days of good time credit as a result. ECF No. 40-5, PageID # 209. He has not been disciplined since that offense, and it appears that he has taken 13 educational and vocational classes and received his GED while incarcerated. *See* ECF No. 40, PageID # 183. While that record is somewhat encouraging, Apao's overall disciplinary record and his extensive criminal history suggest that prior sentences have not had an impact on Apao.

Under § 3582(c)(1)(A), only extraordinary and compelling reasons can justify a reduction in an inmate's sentence. Having balanced the seriousness of Apao's crime, the amount of time remaining on his sentence, his conduct while incarcerated, his criminal history and the potential for recidivism, and the totality of the medical information he has submitted, this court determines that the reasons raised by Apao,

9

while important, do not rise to the level of being extraordinary and compelling reasons warranting a reduction in his sentence.

For the same reasons, Apao has not satisfied § 3582(c)(1)(A)'s third requirement: he has not shown that release would be consistent with the Sentencing Commission's policy statements.  Like the statute itself, the applicable policy statement indicates that a court may only reduce a term of imprisonment if extraordinary and compelling reasons support the reduction.  U.S.S.G. § 1B1.13.  Apao has not made such a showing.

**III.    CONCLUSION.**

Apao's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is denied.

It is so ordered.

DATED: Honolulu, Hawaii, November 13, 2020



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*United States v. Apao*, Cr. No. 13-00515 SOM; ORDER DENYING ROY APAO'S MOTION FOR COMPASSIONATE RELEASE

10